Appellant, Daniel Joseph Condron, appeals from his conviction of gross sexual imposition of a child under 13 in the Montgomery County Common Pleas Court pursuant to his guilty plea.
The appellant was indicted on October 4, 1996 for the crime of rape of a child less than 13 by force and gross sexual imposition of the same child. Prior to trial, the trial court determined that the alleged victim, Amanda Frost, age 3, was incompetent to testify. The State then filed a memorandum in support of admitting the alleged victim's hearsay statements pursuant to Evid. R. 807.
Before the trial court responded to the State's motion, the defendant entered into a negotiated guilty plea to the gross sexual imposition charge. The rape charge was nollied by the State pursuant to agreement of the parties. The trial court sentenced the defendant to a maximum term of five years in prison.
The defendant's guilty plea was an "Alford" plea, to wit, a guilty plea to the charge despite the defendant's protestation of innocence. North Carolina v. Alford (1970), 400 U.S. 25. After satisfying himself that the defendant understood the consequences of an Alford plea, the court requested the prosecuting attorney make a factual statement about the offense into the record.
The prosecutor then made a statement which merely restated the wording of the indictment concerning the gross sexual imposition charge. (Tr. 10). The defendant acknowledged that he understood the prosecutor's statement to be the elements of the offense to which he was pleading guilty.
The trial court also informed the defendant that because of the nature of the offense involved in his plea the court was required to have him assessed and classified as a sex offender and there was a potential requirement of registration and other requirements that might be imposed upon him. (Tr. 11).
At the conclusion of a hearing, the trial court found the defendant to be a "sexual predator" as defined in R.C. 2950.01(E). The court made the following findings in support of its decision.
 The Court finds that the victim was 3 years old at the time of the offense. The Defendant's sexual contact consisted of touching her vaginal area. The Defendant has prior convictions for domestic violence, driving under the influence and aggravated vehicular assault. As described by Dr. Susan Perry Dyer, Consulting Court Psychologist, "Mr. Condron is massive denial about his sexual offending behavior. . . . He is not motivated to admit or deal with his sexually deviant behaviors, and his level of denial would make community-based treatment very difficult." Dyer's Psychological Evaluation, Jan. 29, 1997, pgs. 2-3.
 The Court finds that these facts constitute clear and convincing evidence that the Defendant, who has been convicted of a sexually oriented offense, is likely to engage in the future in one or more sexually oriented offenses. Therefore this Court finds the Defendant to be a "sexual predator" as defined in R.C. Sec. 2950.01(E).
In his first assignment, appellant contends the trial court erred in finding him to be a "sexual predator" based on insufficient evidence to overcome his Alford plea. He argues that his Alford plea provided no factual basis for concluding that the offense of gross sexual imposition was even committed by him.
The defendant argues that the trial court relied wholly on the psychological report of psychologist, Susan Dyer, who opined that because of appellant's "denial" of the offense charged, community treatment would be very difficult. The appellant argues that this report may have furnished a basis for incarcerating him, but not for classifying him as a "sexual predator."
The State argues there is nothing which compels the trial court to disregard the defendant's conviction when it is the product of an Alford plea. State v. Fletchinger (1977), 51 Ohio App.2d 73. The State argues that the trial court heard testimony from the investigating officer, the victim-witness advocate and the probation officer who interviewed the defendant.
A person who is convicted of or pleaded guilty to a sexually oriented offense and "is likely to engage in the future in one or more sexually oriented offenses" may be classified as a sexual predator. R.C. 2950.09(A). In making a determination under R.C.2950.09(B)(1) and (3) as to whether an offender is a sexual predator, the judge shall consider all relevant factors, including, but not limited to:
a. The offender's age;
 b. The offender's prior criminal record regarding all offenses, including sex offenses;
c. The age of the victim;
d. Whether the offense involved multiple victims;
 e. Whether the offender used drugs or alcohol to impair the victim or prevent the victim's resistance; f. Whether the offender completed any prior sentence and, if the prior offense was a sex offense, whether the offender participated in available programs for sexual offenders;
g. Any mental illness or disability of the offender;
 h. The nature of the offender's sexual activity with the victim and whether it was part of a demonstrated pattern of abuse;
 i. Whether the offender displayed or threatened cruelty;
 j. Any additional behavioral characteristics that contribute to the offender's conduct.
After reviewing all the testimony and evidence presented at the hearing, the judge shall determine by clear and convincing evidence whether the offender is a "sexual predator."
The defendant notes the only evidence acknowledged by the trial court other than Susan Dyer's report was the defendant's prior convictions, none of which was a sexually oriented offense. He also notes there were no adult witnesses to the alleged crime and a complete absence of any medical or physical corroboration to the alleged victim's statements.
We agree with the State that the defendant's Alford plea was sufficient to support the defendant's conviction of a "sexually oriented offense." Gross sexual imposition is a sexually oriented offense. R.C. 2950.01(D).
Detective Robert Schmidt of the Moraine Police Department testified that he investigated the alleged offense. He said he interviewed Destiny Parker, age 5, who told him that she and Amanda Frost were playing over at the defendant's trailer and that the defendant was chasing them "and playing like he was a monster." Destiny told him that in the course of this play, appellant touched Amanda in her private parts with his hands and fingers. (Tr. 7).
Schmidt said he then interviewed Amanda Frost and her mother Dawn Frost. He said Dawn Frost told him that her daughter was playing outside and came in and laid down on the couch. Because she seemed not quite herself and was withdrawn, Dawn asked Amanda what happened to her. Dawn told Schmidt her daughter told her Danny touched her. (Tr. 8).
Schmidt said he interviewed Amanda Frost in the presence of her mother and Lisa Edwards, of the Prosecutor's Victim-Witness Division. Schmidt said the child said defendant had hurt her and had pointed a gun at her. He said Amanda told him the defendant touched her both outside and inside her pants and that his hand was inside of her private area. (Tr. 9).
Schmidt said Lisa Edwards drew a crude diagram of a body and asked Amanda to indicate where the defendant touched her. Schmidt said Amanda first pointed to the left shoulder of the drawing and then "she very methodically takes a pen and jabs it between the legs to indicate where he had also touched her." (Tr. 9). Schmidt observed a slight reddish mark on Amanda's shoulder.
On cross-examination, Schmidt admitted that despite allegations by the children that the defendant pointed a gun at them, no weapon was recovered in a search of his trailer. (Tr. 16).
Lisa Edwards of the Montgomery County Victim/Witness Division testified she interviewed Amanda Frost in the presence of her mother. She said Amanda had difficulty disclosing verbally where the individual had touched her, so she drew a picture of a person and asked Amanda to describe where the appellant had touched her. (Tr. 43). She said Amanda literally "jabbed the board on one occasion onto this mark which is between her legs, the vaginal area." (Tr. 43).
On cross-examination, she testified she was not surprised the medical report failed to demonstrate any evidence of penetration of Amanda's vaginal area. (Tr. 49). She said Amanda said the appellant "put a finger in me." (Tr. 51). She said in her experience, the appellant could have placed a finger in a three year old's vagina without disturbing her hymen. (Tr. 53). On redirect, she acknowledged the medical examination of Amanda Frost indicated her hymenal ring was found intact. (Tr. 78).
The presentence report was admitted in evidence. The defendant had a prior criminal record for aggravated vehicular assault, DUI, public intoxication, and domestic violence. (Tr. 105).
The defendant testified that while he enjoyed playing with children, he was not a child molester. (Tr. 116). He said he was playing with them on the day in question with a squirt gun. He said he had children of his own and would not molest any child.
Appellant argues there was insufficient evidence in the record to support the trial court's finding that he was a sexual predator because the trial court erroneously assumed that he committed the gross sexual imposition offense.
The trial court was permitted to assume appellant committed the charged offense because the appellant pled guilty to the offense. See R.C. 2950.09(A). There is no statutory exception for "Alford" pleas of guilty.
Whether there was sufficient evidence to support the trial court's determination that he was a sexual predator is more problematic. Insufficiency of evidence connotes that no rational trier of fact could have concluded that the State had met its burden of proof. In this case, the burden of proof was for the State to prove by clear and convincing evidence that appellant was a sexual predator.
The legislature did not choose to give any particular weight to the factors set out in R.C. 2950.09(B)(2). Certainly a prior record for offenses unrelated to sexual activity would necessarily carry little weight. In this case the defendant's prior criminal record is unrelated to sexual activity. The evidence is undisputed, however, the victim of the crime was three years old, indicating highly aberrant behavior on the defendant's part. The legislature acknowledged, as have a multitude of courts, the overwhelming statistical evidence supporting the high potential of recidivism among sex offenders whose crime involves the exploitation of young children. See, Kansas v. Hendricks (1997),117 S.Ct. 2072.
The trial court considered the defendant's denial of responsibility as a factor in finding appellant to be a "sexual predator." This is not a statutory factor, but presumably was considered by the trial court under the last factor "any additional behavioral characteristics that contribute to the offender's conduct." R.C. 2950.09(B)(2).
The psychologist's report of Susan Dyer indicated that the defendant was in massive denial about his sexual offending behavior. The psychologist did not explain the relevance of denial as it pertains to the behavioral characteristics of "sexual predators." Her report indicated this factor was relevant to whether the defendant was amenable to community based supervision.
In Connecticut high risk sexual offenders must be assessed by mental health counselors after conducting clinical assessments. In determining whether a probationer qualifies as a high risk offender, pedophile, or predatory rapist, the risk of re-offending is determined by 10-13 variables including the offender's "degree of denial." See, Roe v. Office of Adult Probation (2nd Cir. 1997), 125 F.3d 47. It appears, therefore, likely that denial in the face of compelling evidence of sexually offensive conduct is a relevant factor in predicting whether a defendant is a sexual predator. On this record, the trial court could have appropriately given some weight to the defendant's denial in determining his classification. The first assignment of error is overruled.
In his second assignment, appellant contends the trial court erred in accepting in evidence at the sexual predator hearing the psychological report of Dr. Susan Dyer. The record discloses no objection was made by appellant to the admission of the report and, as such, any error is waived. (Tr. 113, 114). Evid.R. 103(A)(1). This assignment of error is overruled.
In his third assignment, appellant contends the provisions of R.C. 2950.01(G)(2) and R.C. 2950.09(B) constitute "ex post facto" laws in violation of his constitutional rights. Appellant argues that since the offense for which he was convicted occurred before the provisions of the new sexual predator legislation, it could not be constitutionally applied to him.
The State argues that this assignment is without merit because this issue is being raised for the first time on appeal citing State v. Awan (1986), 22 Ohio St.3d 120. That opinion, however, was overruled in In re M.D. (1988), 38 Ohio St.3d 149, wherein the Court held the waiver doctrine is discretionary. Presumably this is because a constitutional issue is one of law requiring no deference to the trial court's determination, and consideration by this court forecloses claims of counsel ineffectiveness. Accordingly, we exercise our discretion to consider this assignment.
Several courts in Ohio have found that Ohio's new sexual predator legislation does not offend the ex post facto provision of the United States Constitution. See, State v. Bartis (December 9, 1997) Franklin App. No. 97APA-05-600; State v. Lyttle (December 22, 1997), Butler App. No. CA97-03-060; State v. Kimble (February 4, 1998), Lorain App. No. 97CA 6730; State v. Lance (February 13, 1998), Hamilton App. No. C-970301.
The United States Supreme Court upheld Kansas' Sexually Violent Predator Act, which allows involuntary and indefinite commitment of persons convicted of a sexually violent act and who have a "mental abnormality." The Court held the Act does not constitute punishment and only punishment implicates the double jeopardy and ex post facto clause of the United States Constitution. Kansas v. Hendricks, supra.
The Court reasoned the Act has one and only purpose — protecting the public from a small, narrowly defined category of persons whose members are, beyond a reasonable doubt, sexually dangerous and unable to control their sexual proclivities.
We are confident the United States Supreme Court would not find the registration and notification requirements of the new sexual predator legislation to be "punishment" for constitutional purposes. These provisions are far less onerous than indefinite civil commitment. Its purpose is likewise remedial. Three federal appellate courts have recently concluded that similar "Megan's Laws" do not violate the "ex post facto" provisions of the U.S. Constitution. E.B. v. Verniero (C.A. 3 1997),119 F.3d 1077; Russell v. Gregiore (CA 9 1997), 124 F.3d 1079; Doe v.Pataki (C.A. 2, 1997), 120 F.3d 1263.
The appellant also contends the legislation violates Ohio Retroactive Laws Clause, Art. II, Sec. 28 of the Ohio Constitution. That clause provides generally that the general assembly has no power to pass retroactive laws.
The same Ohio appellate courts which found the sexual predator legislation did not violate the ex post facto provisions of the federal constitution also found it did not violate Ohio's Retroactive Laws Clause. See those cases cited previously. One court has found the legislation unconstitutional as violating the retroactivity provisions of the Ohio Constitution. See State v.Cook (Aug. 7, 1997), Allen App. No. 1-97-21 appeal allowed,80 Ohio St.3d 1470. We side with those courts which uphold the statute's constitutionality. The third assignment of error is overruled.
In his fourth assignment, appellant contends the provisions of R.C. 2950.01 et seq. as applied to him and his "Alford" plea violate his constitutional rights to due process and to the protection from cruel and unusual punishment.
Although the defendant did not raise these constitutional issues below, we exercise our discretion to consider it. Appellant contends his due process rights were violated because it was arbitrary and unfair to subject him to classification as a sexual predator when his guilty plea was an "Alford" plea.
In North Carolina v. Alford, supra, the Supreme Court noted that while most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of a criminal penalty. The court noted an individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime or even protests his innocence of that crime.
Having concluded that classification as a sexual predator is not a penalty or punishment it certainly is not arbitrary or unfair to subject the defendant to a classification as a sexual predator as a consequence of his guilty plea to a sexually oriented offense. If a defendant believed the collateral consequence of being classified a sexual predator as a result of his guilty plea was too onerous, he was free to elect to stand trial rather than enter such a plea. The defendant in this case received a direct benefit from his "Alford" plea, the nolle of the more serious charge of rape by the State of Ohio. There also is nothing "vague" about the provisions of R.C. 2950.09(A) which provide that a person "who pleads guilty" to a sexually oriented offense may be classified as a sexual predator.
Because we have concluded that the registration and notification provisions of the sexual predator legislation cannot be characterized as "punishment," the legislation does not amount to cruel and unusual punishment. These assignments of error are likewise overruled.
In his sixth assignment of error, appellant contends the trial court abused its discretion in imposing the maximum offense for gross sexual imposition. We do not agree. The sentence was within statutory limits. The defendant had a prior criminal record and the victim was only three years of age. The court appropriately followed the sentencing guidelines of R.C. 2929.11. The court could certainly find the shortest sentence would demean the seriousness of the defendant's conduct and would not adequately protect the public from future crimes by the defendant. This assignment is overruled.
In his last assignment, appellant contends the trial court erred in accepting his Alford plea without inquiring of him as to the classification of sexual offender he faced pursuant to R.C.2950.01 et seq.
The trial court addressed the defendant at the time of his plea:
 There are other requirements because of the nature of the offense that you are pleading to. The Court is required to have you assessed and be classified as a sex offender in one of three classifications, and there is a potential requirement of registration and other requirements that may be imposed against you under the new Ohio law going into affect yesterday. Actually, the day before yesterdy. And the Court is required to make those assessmnts prior to sentencing.
The State argues that the trial court substantially complied with Crim.R. 11. That rule requires the court to ensure that the accused understands the consequences of his guilty plea. The accused is not generally required to be informed of those "collateral consequences" which result from his conviction, such as the right to vote, loss of passport, business license, and driver's license. Katz, Giannelli, Criminal Law, Section 43.11. Because Megan's laws are not punitive, the registration and notification requirements are collateral consequences of defendant's guilty plea. See, e.g., Doe v. Poritz (N.J. 1995),662 A.2d 367 at 406. The appellant's last assignment of error is also overruled.
Judgment of the trial court is Affirmed.
YOUNG, P.J., and WOLFF, J., concur.
Copies mailed to:
Steven J. Ring
Charles A. Smiley, Jr.
Hon. Dennis Langer